QUICK *vs.* GARRISON.

Personal property of the *husband*, bought in at a sheriff's sale by a *trustee* of the *wife* with *trust funds* belonging to her, and left with the wife who resides with her husband, is not subject to the debts of the husband : where there is no pretence of fraud in the purchase, no allegation that the act of leaving the property with the wife was fraudulent, or done with the intent to defraud the creditors of the husband, and no evidence that the husband ever exercised acts of ownership over the property, or in any manner intermeddled with it ; *so held*, where such purchase was made in 1817, and the property was levied upon as long subsequent as 1829, under an execution against the husband.

*It seems*, that without some proof of *actual fraud*, the question whether such a transaction be fraudulent or not will not be submitted to a jury.

THIS was an action of *replevin*, tried at the Duchess circuit in November, 1830, before the Hon. JAMES EMOTT, one of the circuit judges.

In 1829, the defendant, as a deputy sheriff, by virtue of an execution against one *John Mastin*, levied upon a horse, wag-

gon, harness and a number of cattle, on a farm in the posses-
sion of the defendant in the execution. The plaintiff *replevied*
the property, and proved that previous to 1817, in a suit for
the partition of certain lands in which *Mrs. Mastin,* the wife of
John Mastin, was interested as a part owner, the lands were
sold, and the share of the proceeds belonging to Mrs. Mastin,
was, by the order of the supreme court, paid over to the plain-
tiff, as the *trustee* of Mrs. Mastin, for her sole and separate use.
In 1817, the *personal property* of John Mastin being about to be
sold on various executions against him, amounting to about
$900, the plaintiff deposited, from the *trust funds* in his hands,
the sum of $900 with an agent, and instructed him to bid in
the property. The property was accordingly bid in for the
plaintiff by such agent, who paid a full and fair price for it,
and probably left it on the farm where Mastin resided, for the
use of Mrs. Mastin, although such fact is not stated in the
case. The property levied upon by the defendant in this suit,
was the same bid in by the agent in 1817, except that some
of the cattle were the increase of the original stock. The
evidence being closed, the defendant insisted that the plaintiff
had failed in shewing title in himself, and that no such tak-
ing had been proved as would entitle him to maintain this
action, it appearing that a claim of property had been inter-
posed, and probably there had not been an actual removal of
the property. The judge charged the jury that there was
sufficient evidence of title in the plaintiff to the property in
question, and that the taking which had been proved was
enough to sustain the action. The jury found for the plain-
tiff, and the defendant moves for a new trial.

*I. L. Wendell,* for the defendant. The trustee, by investing
the trust funds in the purchase of the personal property of the
husband, and leaving the property in the possession of the
husband, lost all control over it. It has been held that if a
trustee who has the wife's property, pays the rents and profits
of the real estate, or hands over the personal estate to the
husband, the *wife* has no remedy. 5 *Vesey,* 743. *A fortiori,*
cannot a *trustee* reclaim it after voluntarily placing property
belonging to the wife in the possession of the husband. See

also 1 *Vesey*, 539. 2 *Vernon*, 270. 9 *Vesey*, 176. 3 *id*. 620. Nor is the situation of the trustee bettered if the property purchased by him be considered *in the possession of the wife*. Property thus situated is subject to the debts of the husband, for as a general rule, it is an undeniable proposition that the possession of the wife is the possession of the husband. The only exception to the rule is, where there are articles entered into before marriage, and the possession of the wife is in pursuance of and in execution of the agreement thus made, as where it is agreed that she shall carry on a separate business. 3 *T. R.* 618, 620. *Cowper*, 432. Here there was no pretence of marriage articles. Nor can the possession of the property by the wife be deemed to be in conformity to the trust reposed in the trustee; on the contrary, it was a direct violation of the trust, the object of which was to keep the property of the wife beyond the reach of the husband. The judge therefore erred in instructing the jury that the plaintiff had shewn title; he should have instructed them to find that the possession was fraudulent as it respected the creditors of the husband, it enabling him to obtain undue credit.

*M. T. Reynolds*, contra.

*By the Court*, Savage, Ch. J. That the judge was correct in his charge, there can be no doubt. The property was purchased by the agent of the plaintiff, which vested in him the legal estate. The taking by the defendant consisted of an actual removing the cattle off the farm where they had been kept. No other question seems to have been raised. There was no pretence of fraud in the purchase of the property, and there is no allegation in the case that the act of leaving the property with the wife (who lived, it is presumed, with her husband) was fraudulent, or done with intent to defraud the creditors of the husband. Those questions, had they been raised, would have been proper for the jury, and no doubt would have been submitted to them, had any evidence been produced to sustain such allegations. There is no evidence in this case that the husband ever exercised acts of ownership

NEW-YORK, over the property in question, or in any mannner intermed-
May, 1833. dled with it.

Stiles   As the facts stated in the case do not present the question
v.    as to the extent of the husband's marital rights, or the liabili-
Tilford.  ty of the wife's separate property to the payment of the hus-
band's debts, any discussion of those questions would be im-
proper, because unnecessary.

New trial denied.*

Decided January term, 1833.